UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:20-CR-305-M

| UNITED STATES OF AMERICA | ) | RESPONSE IN OPPOSITION TO |
| | ) | DEFENDANT'S MOTION TO |
| v. | ) | DISMISS COUNT ONE OF THE |
| | ) | SUPERSEDING INDICTMENT |
| CHARLES ANTHONY PITTMAN | ) | AND CRIMINAL INFORMATION |

NOW COMES the United States of America, by and through the United States Attorney for the Eastern District of North Carolina, and responds in opposition to the defendant's motion to dismiss count one of the Superseding Indictment and Criminal Information. [DE-64, 65]. This Honorable Court retains jurisdiction over the defendant's arson charge, under Title 18, United States Code, Sections 844(f)(1) and 2, arising out of the defendant setting fire to the City of Fayetteville's Market House. The "clear" language of the statute encompasses the defendant's actions. Beyond the plain language of the statute, an additional federal nexus exists as the City of Fayetteville acts as a "federal instrumentality" in its maintenance of the National Historic Landmark. In support, the Government provides the following:

PROCEDURAL BACKGROUND

On June 5, 2020, United States Magistrate Judge James E. Gates issued a Criminal Complaint and corresponding arrest warrant for the defendant. [5:20-mj-01575-JG, DE-1, 2]. In doing so, Magistrate Judge Gates found probable cause to believe the defendant violated Title 18, United States Code, Sections 844 (f)(1), (f)(2), and 2. [5:20-mj-01575-JG, DE-1].

On June 8, 2020, Federal Agents took the defendant into custody. [5:20-mj-01575-JG, DE-11]. After a continuance by the defendant, Magistrate Judge Robert T. Numbers, II held a probable cause and detention hearing for the defendant on June 16, 2020. [DE-12]. At the hearing, the defendant disputed whether probable cause existed to believe he committed a Federal offense. Specifically, the defendant disputed whether his actions, in setting fire to the Market House, constituted a violation of 18 U.S.C. § 844(f)(1).

In a text order, Magistrate Judge Numbers found probable cause to believe the defendant's actions fell within the purview of 18 U.S.C. § 844(f)(1).

On June 24, 2021, a Grand Jury sitting in the Eastern District of North Carolina, returned an Indictment charging the defendant with one count of aiding and abetting the malicious damage or destruction of a building owned or possessed by an institution receiving federal assistance, by fire, creating a substantial risk of injury to persons, in violation of 18 U.S.C. §§ 844(f)(1), 844(f)(2), and 2. [DE-15].

On July 7 ,2020, Allen W. Rogers filed a notice of appearance after the defendant hired Mr. Rogers, in lieu of his federally appointed counsel. [DE-18].

On July 29, 2020, a Grand Jury sitting in the Eastern District of North Carolina, returned a two-Count Superseding Indictment charging the defendant with aiding and abetting the malicious damage or destruction of a building owned or possessed by an institution receiving federal assistance, by fire, creating a substantial risk of injury to persons, in violation of 18 U.S.C. §§ 844(f)(1), 844(f)(2), and 2; and

rioting, in violation of 18 U.S.C. § 2101(a). [DE-21].

On September 23, 2020, the United States, by and through the United States Attorney for the Eastern District of North Carolina, filed a Criminal Information, charging the same violations as the defendant's superseding indictment but eliminating the serious bodily harm element of the defendant's § 844(f)(1) charge. [DE 31]. This adjustment reduced the defendant's statutory mandatory minimum from 7 years' imprisonment to 5 years' imprisonment.

On September 29, 2020, this Court held the defendant's Rule 11 hearing. [DE 33]. During the hearing waived indictment and pled guilty, pursuant to a plea agreement, to the Criminal Information. [DE- 34, 35].

After numerous motions to continue sentencing by the defendant, this Court held a sentencing hearing on August 3, 2021. [DE-53]. At that hearing, this Court continued the sentencing to allow time for the parties to discuss terms associated with the defendant's plea agreement.

On August 17, 2021, Heather L. Rattelade filed a notice of appearance on behalf of the defendant. [DE-56]. Accordingly, Mr. Rogers filed a motion to withdraw, which this Court granted on August 25, 2021. [DE-57, 58].

On December 31, 2021, the defendant filed motions to strike his waiver of indictment and dismiss count one of the Superseding Indictment and Criminal Information. [DE-63, 64]. In support of these motions, the defendant filed a memorandum of support claiming this Court did not have jurisdiction over his actions

in setting fire the Market House, a National Historic Landmark, run by the City of Fayetteville. [DE-65].

FACTS OF THE CASE

**The Market House**

The Market House, located at 1 Market Square, Fayetteville, North Carolina, was built in 1838 on the site of the old State House, where the United States Constitution was ratified in North Carolina.[1]   On May 21, 1970, the Director of North Carolina's Department of Archives and History nominated the Market House to be designated a National Historic Landmark pursuant to the National Historic Preservation Act of 1966 (NHPA). 16 U.S.C. § 470(1)(b)(7). [Exhibit 1].   On September 15, 1979, the Market House was included in the National Register as a National Historic Landmark. [Exhibit 1].   It is now owned and maintained by the City of Fayetteville.   The upper level contains a museum and event space for private events, while the lower level remains open space.   The building includes several signs noting its historical significance.

National Historic Landmarks are primarily preserved and managed by the National Park Service (NPS).[2]  The NPS handles the federal designation of National

---

[1]   Scott A. Miskimon, <u>The Fires of 1831: Fayetteville and Raleigh in Flames</u>, NCPEDIA, August 3, 2010, https://www.ncpedia.org/fires-1831-fatteville-and-raleigh (last visited January 23, 2022).

[2]   National Park Service, <u>National Historic Landmarks</u>, https://www.nps.gov/subjects/nationalhistoriclandmarks/index.htm (last visited January 23, 2022); The National Historic Landmarks' mission page notes that only sixteen percent (16%) of National Historic Landmarks are actually owned by the federal government and that "[d]esignation of a property as a National Historic Landmark does not give ownership of the property to the federal government or the National Park Service."

Historic Landmarks and requires that applicant sites preserve nationally historic events, places, and people for all Americans.[3]   The NPS additionally provides federal grant programs, tax credits, and other opportunities to maintain National Landmarks' historic character.[4]   National Historic Landmarks "have been recognized by the Secretary of the Interior as possessing national significance."[5]

## The City of Fayetteville

According to the City of Fayetteville's 2020 Comprehensive Annual Financial Report, the City operates public services including administration, public safety, environmental protection, transportation, economic and physical development, recreation and community facilities, wastewater and storm water utilities, transit, airport, and solid waste collection and recycling. [Exhibit 2].   "The City of Fayetteville receives substantial revenues from Federal and State sources." [Exhibit 2].   The City of Fayetteville's General Fund is the general operating fund of the city which accounts for all financial resources of the general government except those required to be accounted for in another fund. [Exhibit 2]. One of the primary sources of revenue for this fund is federal grants. [Exhibit 2].

## The Market House Fire

On May 30, 2020, a protest took place in downtown Fayetteville, North Carolina.   At approximately 7:15 p.m., the previously peaceful protest turned violent

---

[3]   Id.
[4]   Id.
[5]   Id.

as multiple individuals, both known and unknown, set fire to the City of Fayetteville's Market House. As authorities responded to the protest, Investigators identified the defendant as taking part in setting the Market House ablaze.

Local media covering the protest filmed the defendant standing on the second story balcony of the Market House holding a red, plastic gasoline container. The defendant wore a black t-shirt with a black and white photo of Martin Luther King, Jr. addressing a crowd on the National Mall. The defendant also wore white earbuds which were dangling from one ear, down his chest, and partially tucked into the neckline of his t-shirt.



An employee, who responded to the Market House when the alarm went off, witnessed several individuals on the second floor busting out windows and breaking furniture. One of those individuals, who the employee later identified as the defendant, went to an open window to show the crowd below the red gasoline container in his hands. The employee then watched as the defendant doused the floor of the second story with the gasoline.



The employee's attention turned to the other individuals. However, when the employee turned back to the defendant, he noticed the defendant standing next to a fire—right where the defendant poured gasoline. The defendant then ran out of the Market House.

The next day, a crime analyst from the Fayetteville Police Department confirmed the defendant's identity from the live television image and other social media outlets. The analyst provided a Facebook Live video from the defendant's profile, Charles KingCappo Pittman, to ATF Agents. The video, recorded earlier in the day on May 30, 2020, showed the defendant driving his vehicle in downtown Fayetteville. The defendant wore the same black t-shirt with the black and white photo of Martin Luther King, Jr., as well as the white earbuds.



In the video, the defendant discussed the Market House. The defendant started with saying, "I'm out here doing the scopey scopey. I'm out here doing the

scope. Scoping out the scene."   When the defendant pulled up to the traffic circle with the Market House in the middle, he said, "It looks like it's there for the taking."   As he passed a Fayetteville Police Department patrol car, the defendant said, "But they know it's coming. They are waiting."   After discussing whether slaves were sold at the Market House, the defendant declared, "maybe it should come down."

The defendant then mocked the peaceful protesters, asking "What you gonna do? Barbeque and mildew?"   As the defendant pulled away from the Market House he told the Facebook Live crowd, "We'll be back. We'll be back...I'll be back y'all. 100."

As Investigators continued researching the defendant's social media history, they noted several posts relevant to his intent for the Market House.

 

As a result of the fires on May 30, 2020, the Market House sustained substantial damage including charring and discoloration on the exterior stairway and supportive railing; charring and discoloration to the wooden stairs and supportive railing; charring and discoloration to the wooden safety rail located on the exterior second floor balcony; discoloration and soot on the interior walls around the entrance doorway and wooden stairs that accessed the second floor; and charring and mass loss to the wood flooring on the second floor. Additionally, multiple individuals reported to local hospitals suffering burns from the fire including another individual federally prosecuted, who sustained third degree burns.

## ANALYSIS

**I. The pleadings are sufficient.**

Count One of both the Superseding Indictment and the Criminal Information contain all the necessary elements of the crime charged and provide sufficient information to the defendant to plead double jeopardy if a subsequent prosecution for the same act arose.

An indictment "shall be a plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. Pro. (7)(c)(1). An indictment is sufficient if it indicates the elements of the offense and fairly inform the defendant of the exact charges and enables the defendant to plead double jeopardy in subsequent prosecutions for the same offense. United States v. Williams, 152 F.3d 294, 299 (4th Cir. 1998). Accord Hamling v. United States, 418

U.S. 87, 117 (1974). An indictment that tracks the statutory language is sufficient. Hamling, 418 U.S. at 117; United States v. Wicks, 187 F.3d 426, 427 (4th Cir. 1999).

18 U.S.C. § 844(f)(1) provides in pertinent part, "whoever maliciously damages or destroys, or attempts to damage or destroy, by means of fire or an explosive, any building, vehicle, or other personal or real property in whole or in part owned or possessed by . . . any institution or organization receiving Federal financial assistance, shall be imprisoned not less than 5 years and not more than 20 years, fined under this title, or both." § 844(f)(2) provides, "whoever engages in conduct prohibited by this subsection, and as a result of such conduct, directly or proximately causes personal injury or creates a substantial risk of injury to any person, including any public safety officer performing duties, shall be imprisoned for not less than 7 years and not more than 40 years, fined under this title, or both."

Accordingly, Count One of the defendant's Superseding Indictment reads:

On or about May 30, 2020, in the Eastern District of North Carolina, the defendant, CHARLES ANTHONY PITTMAN, aiding and abetting others both known and unknown to the Grand Jury, maliciously damaged and destroyed by means of fire and an explosive, a building, the Market House, located at Market Square, Fayetteville, North Carolina, in whole and in part owned and possessed by the City of Fayetteville, an organization receiving Federal financial assistance, and as a result of such conduct, the defendant created a substantial risk of injury to any person, in violation of Title 18, United States Code, Sections 844(f)(1), 844(f)(2), and 2.

Count One of the defendant's Criminal Information reads:

On or about May 30, 2020, in the Eastern District of North Carolina, the defendant, CHARLES ANTHONY PITTMAN, aiding and abetting others both

known and unknown to the Grand Jury, maliciously damaged and destroyed by means of fire and an explosive, a building, the Market House, located at Market Square, Fayetteville, North Carolina, in whole and in part owned and possessed by the City of Fayetteville, an institution receiving Federal financial assistance, in violation of Title 18, United States Code, Sections 844(f)(1) and 2.

The Counts in both charging instruments track the pertinent statutory language and contain every element of the crime charged. Despite extensive precedent to the contrary, the defendant claims the Indictment must provide details as to the federal financial assistance provided to the City of Fayetteville and the Market House. Inherent in this argument, the defendant seeks to narrow the scope of jurisdiction within the pleading itself to support of their attack on jurisdiction. Ultimately, this line of attack falls short based on the analysis of the ultimate issue in their motion, as discussed below. Accordingly, the pleading is sufficient.

## II. A federal nexus exists for the City of Fayetteville's Market House.

A sufficient federal nexus exists for the City of Fayetteville's Market House, a National Historic Landmark. The Market House is owned by the City of Fayetteville, and the City of Fayetteville receives federal financial assistance. Further, the City of Fayetteville maintains the National Historic Landmark, acting as an instrumentality for the federal government.

"Statutory interpretation always begins (and often ends) with the words of the statute itself." United States v. Southern Management Corp., 955 F.2d 914, 920 (4th Cir. 1992) citing Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 842-43 (1984). "If the words convey a clear meaning, courts may not

sift through secondary indices of intent to discover alternative meanings." Id.

Previously, the Fourth Circuit Court of Appeals followed this plain language approach in its analysis of federal nexus requirement within the meaning of 18 U.S.C. § 844(f) in United States v. Davis, 98 F.3d 141 (4th Cir. 1996). In Davis, the Court found a sufficient federal nexus for the arson of a private townhouse in which the lessee used subsidized funding from the Virginia Housing Development Authority, which received federal funding. Id. at 145. In finding jurisdiction, the Court said the language of § 844 is "clear," and legislative history is not required for its interpretation. Id. 144-45.

Following Davis, the language of § 844(f) is clear, jurisdiction extends to "any building . . . in whole or in part owned or possessed by . . . any institution or organization receiving Federal financial assistance." 18 U.S.C. § 844(f)(1). The City of Fayetteville owns the Market House, and the City of Fayetteville receives federal financial assistance. Therefore, federal jurisdiction exists.

Other courts have followed this plain language approach when interpreting this jurisdictional element of § 844, as well. In United States v. Elliott, 684 F. App'x 685 (10th Cir. 2017) (unpublished), the Tenth Circuit considered the precise issue raised in this case and concluded that under the plain language of the statute, federal jurisdiction expressly extends to *any* building owned by *any* organization or institution receiving federal financial assistance. Elliott, 684 F. App'x at 696. (*Emphasis added.*)

13

In <u>Elliot</u>, the defendant bombed a county-owned building occupied by the county attorney's office and was convicted under § 844(f). <u>Id.</u> at 686.    At the time of the bombing, neither the county attorney's office nor the building received federal financial assistance. <u>Id.</u> at 696.    However, the building was owned by the county and the county received federal funds. <u>Id.</u>

The defendant appealed, arguing that because federal funds were not being directed to the building or to the county attorney's office, there was no federal jurisdiction.    Rejecting this argument, the Tenth Circuit noted that the statute expressly covers any building owned by an entity receiving federal financial assistance. <u>Id.</u>    Moreover, the Court emphasized that the disjunctive statutory language "owned or possessed by, or leased to" indicated that mere ownership of the property by the county–which was receiving federal funds at the time of the bombing– was dispositive. <u>Id.</u>

In reaching its decision in <u>Elliott</u>, the Court turned to its previous decision in <u>United States v. Apodaca</u>, 522 F.2d 568 (10th Cir. 1975).    In <u>Apodaca</u>, the defendant used dynamite to bomb a county sheriff's patrol car and was subsequently convicted under § 844(f). <u>Id.</u> at 569.    While the county itself received federal financial assistance, there was no evidence that the patrol car was purchased using federal funds. <u>Id.</u> at 571-72.    On appeal, the defendant claimed that the federal jurisdiction applied only to specific items purchased with the federal funds. <u>Id.</u> at 572.    The court disagreed, holding that "[t]he clear and unambiguous language of the statute

14

provides that it applies to any property owned, possessed, used by or leased to any organization receiving federal financial assistance." Id.

Likewise, the Fifth Circuit focused on the plain language of § 844(f) finding federal jurisdiction over the arson of a county courthouse. United States v. York, 600 F.3d 347, 351, 354 (5th Cir. 2010). In York, defendant was convicted under § 844(f) for throwing a Molotov cocktail against a boarded window at a county courthouse in Texas. Id. at 351. The window at which the Molotov cocktail was thrown was in the office of a county agent for the Texas Agrilife Extension Service, an entity that received federal funding. Id. at 353. Other offices in the courthouse both received federal funding or were themselves federal entities including "an adjunct office of the United States Department of Agriculture, County Clerk's Office, the District Clerk's office, and the County Auditor's office." Id.

On appeal, the defendant contested the sufficiency of evidence to sustain a guilty verdict, arguing in part that the government lacked a sufficient federal nexus for the arson count. Id. at 352. Finding jurisdiction existed, the Fifth Circuit Court of Appeals concluded (a) possession of the building in part by the office of the county agent for the Texas Agrilife Extension Service and (b) possession of the building in part by federal departments such as the United States Department of Agriculture, are each sufficient to establish jurisdiction. Id. at 354.

In his motion, the defendant relies entirely on the First Circuit Court of Appeal's decision in United States v. Hersom, 588 F.3d 60 (1st Cir. 2009). [DE-65 at

11]. In <u>Hersom</u>, the First Circuit ignored the "clear" language of the statute and used the rule of lenity to narrow the construction of the statute to organizations receiving federal financial assistance related to specific property. <u>Hersom</u>, 588 F.3d at 67.

<u>Hersom's</u> reliance on the rule of lenity is misplaced for several reasons. First, as previously addressed, the statute is not ambiguous. The rule of lenity "applies only when, after consulting traditional canons of statutory construction, we are left with an ambiguous statute." <u>United States v. Shabani</u>, 513 U.S. 10, 17 (1994).

Second, the legislative history and purpose of the statute are fully consistent with the plain language. Several courts have noted that the history of the section reflects no "indication that Congress intended any limitation of the scope of Section 844(f)." <u>United States v. Brown</u>, 384 F. Supp. 1151, 1155 (E.D. Mich. 1974; <u>accord</u> <u>United States v. Kimberlin</u>, 805 F.2d 210, 242 (7th Cir. 1986) ("We have no doubt that Congress intended broad construction of the terms used, within constitutional limits.").

Third, assuming the statute may be ambiguous to some individuals, the defendant is simply not one of them. The defendant engaged in arson, with full understanding that such conduct is criminal. <u>See</u> <u>United States v. Davis</u>, 872 F. Supp. 1475, 1483 (E.D.Va 1995) (noting that it should have been obvious to the defendant that his conduct was criminal and thus the primary reason for the rule of lenity, protecting innocent citizens unaware that their conduct is criminal, was not present).

Here, it is uncontested that the City of Fayetteville owns in whole, the Market House. It is further uncontested that the City of Fayetteville is an institution or organization receiving Federal financial assistance. Therefore, under the plain language of the statute, consistent with the reasoning of <u>Elliott</u>, <u>Apodaco</u>, and <u>York</u>, federal jurisdiction exists to prosecute the defendant for the destruction of this National Historic Landmark.

For the sake of argument, it is important to note a third analysis of the statutory construction used by the Sixth and Seventh Circuits. This analysis—referred to as the "federal instrumentalities approach"—focuses on the federal interest in the property as the principle dictating jurisdiction. Relying on the Property Clause and the Necessary and Proper Clause of the Constitution, this statutory interpretation requires that the "organization" engage in governmental functions in lieu of the federal agency. <u>See</u> <u>United States v. Brown</u>, 557 F.2d 541 (6th Cir. 1977); <u>United States v. Kimberlin</u>, 805 F.2d 210 (7th Cir. 1986).

<u>Brown</u> dealt with the bombing of a Planned Parenthood League clinic in Michigan and exchanged gunfire with police officers. The Sixth Circuit Court of Appeals found a sufficient federal nexus by relying on the District Court's analysis of the issue. <u>Brown</u>, 557 F.2d at 559, <u>citing</u> <u>United States v. Brown</u>, 384 F.Supp.1511 (E.D.Mich. 1974) (reversed on other evidentiary grounds).

In finding jurisdiction, the District Court pointed first to indications that "Congress intended that the term 'Federal financial assistance' be given a broad

meaning." <u>Brown</u>, 382 F. Supp at 1154.   The court further noted:

> Neither in the Hearings nor in the House Report is there any indication that Congress intended any limitation on the scope of Section 844(f). It is intended to cover the bombings of any real or personal property of any institution receiving federal financial assistance in whatever capacity, for whatever purpose, and in whatever amount. In light of the legislative history of Section 844(f) and the clear, unambiguous language of the statute itself it cannot be said that Congress did not intend the bombing of the Planned Parenthood League main office to fall within the purview of Section 844(f).

<u>Id.</u> at 1155.

The Court went on to address "the most substantial issue" raised by the defendant, that there is no constitutional authority for Congress to enact such a broad statute. <u>Id.</u>   The Court first acknowledged that § 844(f) "relies for its constitutional base on the power of the federal government to protect its own property." <u>Id.</u> at 1155. The Court then noted the government has no such property interest in the Planned Parenthood League nor in any of the League's property. <u>Id.</u>

However, <u>Brown</u> found a second basis for Congressional authority under the Necessary and Proper Clause, noting "the Necessary and Proper Clause is a grant of authority to protect entities which are engaged in governmental functions." <u>Id.</u> at 1158.   The Court concluded that Planned Parenthood was an instrumentality of the federal government because it provided facilities in furtherance of announced national goals and was an agency "which the federal government uses in lieu of its own agency or facility to carry out a federal program." <u>Id.</u>   The Court further noted,

18

"Congress must have the means to protect those institutions it is currently funding to carry out federal programs if those programs are to be economically or expeditiously carried out." Id. at 1160. Thus, Brown stands for the proposition that organizations which act as federal instrumentalities, in carrying out announced national goals or federal programs, are covered under § 844(f) based on the Property Clause and the Necessary and Proper Clause.

Similarly, the Seventh Circuit found § 844(f) jurisdiction based on the federal instrumentalities approach, characterizing a school district corporation as effectuating a national program for special education. United States v. Kimberlin, 805 F.2d 210, 252 (7th Cir. 1986). In that case, the defendant was charged under § 844(f) among other charges, when he damaged the School Town of Speedway (an urban school district) on two dates. Id. at 241-42. The defendant appealed the convictions and sentence on 22 counts, including his conviction under § 844(f).

On appeal, the defendant contended that "there was no proof that the School Town received federal financial assistance within the meaning of § 844(f)." Id. at 242. The School Town of Speedway was one of ten school corporations to enter into a Joint Agreement for Special Education Services; one corporation was to be chosen as the Servicing Corporation; each participating corporation was to obtain financing through federal and state funding programs and pay its share computed based on enrollment from each; and the School Town of Speedway was not chosen as the Servicing Corporation but contributed up to six children each year for the joint

program. Id. at 243. The defendant argued that Speedway did not receive money itself and therefore received no financial assistance. Id. at 242.

Affirming the defendant's conviction under § 844, the Seventh Circuit found the co-op was a group of corporations acting jointly to carry on specialized services. Id. at 243. "Each school corporation [was] performing the public and federally encouraged function of educating its students in need of special services, accomplishing that by collective action for the sake of efficiency, and receiving its proportionate share of federal money with which to do so." Id. Kimberlin explicitly references Brown and Apodaca, noting that "[i]t has been held that federal funds need not be directly disbursed to an institution in order to constitute federal financial assistance under § 844(f). Id. at 242. Kimberlin also refers to Brown's Necessary and Proper Clause analysis and supports the approach used in Brown, emphasizing that performing a federally encouraged activity is sufficient for § 844(f) jurisdiction.

Following the approach used in Brown and Kimberlin, the City of Fayetteville is a federal instrumentality. The federal government announced a national program of historic preservation in the National Historic Preservation Act of 1966. 16 U.S.C. § 470(1)(b)(7). The act specifically states that it is:

> necessary and appropriate for the Federal Government to accelerate its historic preservation programs and activities, to give maximum encouragement to agencies and individuals undertaking preservation by private means, and to assist State and local governments and the National Trust for Historic Preservation in the United States to expand and accelerate their historic preservation programs and activities.

Id.  As a National Historic Landmark, the Market House is part of the federal program to preserve historical sites for all Americans.

In maintaining the Market House, the City of Fayetteville is performing the public and federally encouraged function of preserving historic sites of national significance.  The City of Fayetteville receives guidelines for the Market House's operations and is routinely monitored for compliance with federal guidelines.[6]  The Market House is further eligible for federal grants and tax incentives.[7]  This is a clear federal interest sufficient for jurisdiction under the Necessary and Proper Clause approach.

## CONCLUSION

The defendant's Superseding Indictment and Criminal Information sufficiently plead the crime charged in Count One.  Further, federal jurisdiction exists over the offense, as the plain language of the statute covers the Market House, which is owned by the City of Fayetteville—an organization receiving federal financial assistance.  Additionally, the City of Fayetteville acts as an instrumentality of the federal government in its maintenance of the Market House—

---

[6]  National Park Service, Monitoring of National Historic Landmarks, https://www.nps.gov/subjects/nationalhistoriclandmarks/condition-assessments.htm (last visited July 1, 2020); National Park Service, Regulatory Compliance, https://www.nps.gov/subjects/nationalhistoriclandmarks/regulatory-compliance.htm (last visited July 1, 2020).

[7]  National Park Service, Grants and Tax Incentives for the Preservation of National Historic Landmarks, https://www.nps.gov/subjects/nationalhistoriclandmarks/grants-and-incentives.htm (last visited July 1, 2020).

a property federally recognized as a Historic Landmark.

For the reasons set forth above, the Government respectfully requests that the Court deny the defendant's motion to dismiss Count One of the Superseding Indictment and Criminal Information.

Respectfully submitted this 24th day of January, 2022.

MICHAEL F. EASLEY, JR.
United States Attorney

*/s/ J.D. Koesters*
J.D. KOESTERS
Assistant United States Attorney
United States Attorney's Office Attorney
150 Fayetteville Street, Suite 2100
Raleigh, NC 27601
Telephone: (919) 856-4845
NC Bar No. 41372

<u>CERTIFICATE OF SERVICE</u>

This is to certify that I have this 24th day of January, 2022, served a copy of the foregoing response upon the counsel for the defendant in this action by electronically mailing such filing to:

Heather L. Rattelade
708 Rush Rd.
Fayetteville, North Carolina 28305

*/s/ J.D. Koesters*
J.D. KOESTERS
Assistant United States Attorney
United States Attorney's Office Attorney
150 Fayetteville Street, Suite 2100
Raleigh, NC 27601
Telephone: (919) 856-4845
NC Bar No. 41372