IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

Case No. 5:20-CR-00305-M

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| v. | ORDER |
| CHARLES PITTMAN, | |
| Defendant. | |

This matter comes before the court on Defendant's Motion to Dismiss Count One of the Indictment [sic] [DE 64]. Defendant seeks dismissal of the first count in the operative Criminal Information (DE 31) pursuant to Rules 12(b)(2) and 12(b)(3) of the Federal Rules of Criminal Procedure,[1] arguing that Count One "fails to state a claim that confers subject-matter jurisdiction on this court." The matter is fully briefed, and the court heard argument on February 23, 2022. For the reasons that follow, the motion is denied.

Count One of the Information alleges that on May 30, 2020, Defendant "aiding and abetting others ... maliciously damaged and destroyed by means of fire and an explosive, a building, the Market House, located at Market Square, Fayetteville, North Carolina,[2] in whole or in part owned and possessed by the City of Fayetteville, an institution receiving Federal financial assistance, in

---

[1] Rule 12(b)(3) governs motions that "must be made before trial." At the time Defendant filed the present motion, he was awaiting sentencing following arraignment. Therefore, the court will proceed pursuant to Rule 12(b)(2).
[2] The Market House is a "National Historic Landmark" listed in the National Register of Historic Places. DE 67-1. The United States asserts that the building "contains a museum and event space for private events, while the lower level remains open space." Resp. at 4, DE 67.

violation of Title 18, United States Code, Sections 844(f)(1) and 2." DE 31. Such conduct violates 18 U.S.C. § 844(f)(1), which provides:

> Whoever maliciously damages or destroys, or attempts to damage or destroy, by means of fire or an explosive, *any building*, vehicle, or other personal or real property *in whole or in part owned or possessed by*, or leased to, the United States, or any department or agency thereof, or **any institution or organization receiving Federal financial assistance**, shall be imprisoned for not less than 5 years and not more than 20 years, fined under this title, or both.

18 U.S.C.A. § 844(f)(1) (emphasis added).

Citing a First Circuit opinion, Defendant argues that Count One fails to "adequately allege the nexus between federal financial assistance provided to the City of Fayetteville and the Market House," which is "an essential fact to trigger federal subject-matter jurisdiction." Memo., DE 65 at 9, 11 ("This motion relies on the First Circuit's decision in [*United States v.*] *Hersom*[, 588 F.3d 60, 67 (1st Cir. 2009)]").[3] The *Hersom* court determined that "section 844(f) is generally limited to property owned or possessed using federal financial assistance." *Hersom*, 588 F.3d at 67. Thus, Defendant argues that because the Market House was a gift to the City and not purchased using federal funds, the court has no jurisdiction to convict him under Count One.

The court finds that application of the plain language of Section 844(f)(1) to the factual allegations of this case demonstrates the court's jurisdiction in this matter. "When examining statutory language, courts generally give words their common usage." *United States v. Davis*, 98 F.3d 141, 144 (4th Cir. 1996) (citing *United States v. Murphy*, 35 F.3d 143, 145 (4th Cir. 1994), *cert. denied*, 513 U.S. 1135 (1995)). "If the language of the statute is clear and unambiguous,

---

[3] On June 16, 2020, Magistrate Judge Gates addressed the same or similar argument finding: "After reviewing the language of 18 U.S.C. 844(f)(1) and related case law, the court finds that the fact that the Market House's owner, the City of Fayetteville, receives federal financial assistance is sufficient to bring Pittman's conduct under the statute's purview. *United States v. Elliott*, 684 F. App'x 685, 695-96 (10th Cir. 2017). *But see United States v. Hersom*, 588 F.3d 60, 65-67 (1st Cir. 2009)."

2

Case 5:20-cr-00305-M Document 79 Filed 04/27/22 Page 2 of 8

courts simply apply the statute rather than interpret the statute." *Id.* (citing *Murphy*, 35 F.3d at 145); *see also United States v. Abdelshafi*, 592 F.3d 602, 607 (4th Cir. 2010) ("We remain mindful that in 'interpreting the plain language of a statute, we give the terms their ordinary, contemporary, common meaning, absent an indication Congress intended' the statute's language 'to bear some different import.'") (quoting *Stephens ex rel. R.E. v. Astrue*, 565 F.3d 131, 137 (4th Cir. 2009)). Here, the unambiguous language of the statute contemplates the malicious damage or destruction of "any building . . . in whole or in part owned or possessed by . . . any institution or organization receiving federal financial assistance." Thus, if an organizational owner of any building receives federal funds, and that building is damaged by fire and/or an explosive, the perpetrator of the damage may be subject to the penalties in 18 U.S.C. § 844(f)(1).

The Fourth Circuit has spoken on Section 844(f)(1), but not in the precise context presented here; in *United States v. Davis*, addressing what appears to be an earlier version of the statute,[4] the court was asked to determine whether an organization receiving federal funds had "used" a personal residence damaged by arson. *See* 98 F.3d 141 (4th Cir. 1996). The *Davis* court first determined that the Virginia Housing Development Authority ("VHDA") received federal financial assistance, then proceeded to evaluate whether the VHDA "used" the damaged residence. *Id.* at 145 ("When the VHDA helped Miss Williams with her rent payments, it was accomplishing

---

[4] The *Davis* court quoted the statutory language as follows: "Federal criminal jurisdiction is based on 18 U.S.C. § 844(f), which makes it a federal crime to:

> maliciously damage[ ] or destroy[ ], or attempt[ ] to damage or destroy, by means of fire or an explosive, any building, vehicle, or other personal or real property in whole or in part owned, possessed, ***or used by***, or leased to, the United States, any department or agency thereof, or any institution or organization receiving Federal financial assistance."

98 F.3d at 143-44 (emphasis added). Today, the statute no longer includes the language "used by" in addition to "owned or possessed by, or leased to."

3

its statutory function. We are of the opinion that there was sufficient evidence for the jury to determine that the VHDA used Miss Williams' house.").

In this case, there is no question that the City of Fayetteville received federal financial assistance in March 2020; in addition, there is no dispute that the Market House was owned by the City. Defendant, primarily citing *Hersom*, contends that since there is no evidence Market House was purchased with, or has otherwise received, federal funds, Section 844(f) does not apply. *See* Memo., DE 65 at 13 ("unlike the *Davis* property, the City of Fayetteville [ ] did not purchase Market House using federal funds, the City has not used the Market House in more than a quarter of a century,[5] and the City has not utilized federal funds to subsidize the use or maintenance of the property"). Defendant asserts that the Government's interpretation of the statute is overly broad in that "anyone" who damages by fire the property of "any" organization that receives federal funds would be subject to Section 844(f). According to Defendant, the Government's "[f]ailure to allege any nexus between the damaged property and the federal funding provided to the City of Fayetteville in the indictment constitutes a jurisdictional defect" and Count I must be dismissed. *Id.* at 18. The Government counters that Defendant's reliance solely on *Hersom* is misplaced because that court relied on the rule of lenity, which is applicable only if a statute is ambiguous. Resp., DE 67 at 16.

A majority of courts appear to rely on a literal ("clear and unambiguous language") reading of the statute and find that application is proper if the damaged property is owned by an entity that receives federal funds. *See United States v. Elliott*, 684 F. App'x 685, 696 (10th Cir. 2017) ("The statute expressly covers arson of any building owned by an entity receiving federal funds."); *United States v. York*, 600 F.3d 347, 354 (5th Cir. 2010) (finding a legally sufficient nexus for

---

[5] Evidence presented at the hearing, however, showed that the upper floor of the Market House was used in part as a museum.

4

subject-matter jurisdiction where organization who received federal financial assistance partly owned the damaged part of a building); *United States v. Laton*, 352 F.3d 286, 296 n.9 (6th Cir. 2003) (noting that section 844(f) "criminalizes the arson of . . . any building owned by an organization obtaining federal assistance"). In fact, in *Davis*, the Fourth Circuit approached this question by first finding that the organization alleged to have "used" the property *received federal funds*, then concluded that the organization *in fact used* the residence. In *Elliott*, the Tenth Circuit rejected the defendant's invitation to follow *Hersom* and relied on its previous 1975 holding that Section 844 applied to the bombing of a police car owned by a county that received federal funds. 684 F. App'x at 696 (citing *United States v. Apodaca*, 522 F.2d 568, 571-72 (10th Cir. 1975)). Applied here, a plain reading of the statute reveals that the Market House, damaged by fire, is owned by the City of Fayetteville, which receives federal funds.

Furthermore, "it is well settled that proper statutory interpretation must respect Congress's purpose underlying section 844(f)." *United States v. Davis*, 872 F. Supp. 1475, 1481 (E.D. Va. 1995). Section 844 arises out of Title XI of the Organized Crime Control Act of 1970, Pub. L. 9-452, 84 Stat. 922. The preamble to Title XI states, "The Congress hereby declares that the purpose of the Title is to protect interstate and foreign commerce against interference and interruption by reducing the hazards to persons and property arising from the misuse and unsafe or insecure storage of explosive materials." Pub. L. 9-452, *reprinted in* 1970 U.S.C.C.A.N. 1073, 1109. A report by the House of Representatives states that Title XI "establishes federal controls over the interstate and foreign commerce of explosives and is designed to assist the states to more effectively regulate the sale, transfer and other disposition of explosives within their borders. ... In addition to increasing present penalties for the illegal use of explosives, *Title XI expands the scope of federal law to cover malicious damage or destruction by explosives* of federal premises

and other federal property *as well as to the premises and property of institutions or organizations receiving federal financial assistance.*" H.R. Rep. No. 91–1549, 91st Cong., 2d Sess. (1970), *reprinted in* 1970 U.S.C.C.A.N. 4007, 4011, 1970 WL 5695 (emphasis added).

First, the court finds that the application of Section 844(f) to the factual allegations of this case is consistent with the statute's purpose in regulating the misuse of explosives; Defendant is alleged to have poured gasoline—an "explosive" pursuant to Section 844(j)—on the floor and walls of the Market House before igniting the fire. *See United States v. Lee*, 726 F.2d 128, 131 (4th Cir. 1984) ("The critical but straightforward question on appeal is whether this statute reaches the arson at issue, in which uncontained gasoline concededly was used as an accelerant. . . . We think it plain that the literal definition of 'explosive' embraces gasoline as a 'chemical compound ... that contains any oxidizing and combustible units, or other ingredients, in such proportions ... that ignition by fire ... may cause an explosion.'").

Second, the court finds nothing in the statute or report limiting the statute's reach to property having "some connection or relationship" with federal financial assistance. *See* Mot. at 18. The statute and report specify that damage by fire or explosive to "any" building owned, in whole or in part, by "any" organization or institution receiving federal funds falls under the statute's purview. The language is neither vague nor confusing. *Davis*, 98 F.3d at 144–45 ("Because the language of the statute is clear, we need not look to the legislative history."). Congress could have restricted the scope of the statute by including the language, "any building or property *purchased or maintained using federal funds*" or "any institution or organization receiving federal funds *for the purchase or maintenance of the building or property*," but it did not. Moreover, Defendant's citation to the House report's note that Section 844(f) "relies for its constitutional base on the power of the federal government to protect its own property" for support

6

of a narrow interpretation is not persuasive; other portions of the report repeat the "any" language and the report states in particular, "Title XI expands the scope of federal law to cover malicious damage or destruction by explosives *of federal premises and other federal property **as well as** to the premises and property of institutions or organizations receiving federal financial assistance*." 1970 WL 5695 (emphasis added).

At the hearing, Defendant suggested for the first time that the City of Fayetteville is neither an institution nor an organization for purposes of Section 844(f); accordingly, the court permitted the parties to submit supplemental briefing on this question. DE 72. In his brief, Defendant contends that the City is not an organization[6] contemplated by the statute because (1) the term, as defined in 18 U.S.C. § 18, does not include governmental entities; and (2) a "legal person" is "not synonymous" with a "political subdivision of the state." DE 76. Defendant is correct that Title 18 of the federal criminal code defines "organization" as "a person other than an individual." 18 U.S.C. § 18. However, the term, "person" does not exclude the government. Defendant cites to the Merriam-Webster definition of "legal person," which is "a body of persons or an entity (as a corporation) considered as having many of the rights and responsibilities of a natural person and especially the capacity to sue and be sued." *See* https://www.merriam-webster.com/legal/legal%20person, last visited April 25, 2022. Defendant's attempt to segregate government entities from this definition, arguing that they enjoy immunities from suit, is not persuasive. Certainly, no one can dispute that governments, including municipalities, have the

---

[6] While the criminal Complaint, original Indictment, and Superseding Indictment all refer to the City as an "organization," the operative Information references the City as an "institution." *See* DE 31. The court finds this is a distinction without a difference here. Merriam-Webster defines an institution as "an established organization or corporation (such as a bank or university) especially of a public character." *See* https://www.merriam-webster.com/dictionary/institution, last visited April 25, 2022. This definition is not inconsistent with the court's evaluation of the definition of "organization" below.

7

*capacity* to sue and be sued; in fact, municipalities and other local governments are typically not immune from contractual claims, and they are "persons" subject to liability for constitutional violations under 42 U.S.C. § 1983. *See Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978). Moreover, nothing in Section 844 indicates that Congress intended to exclude municipalities from its definition of "organization."[7] The court finds that the City of Fayetteville is an "organization" within the meaning of 18 U.S.C. §§ 18 and 844(f)(1).

Therefore, the court concludes that the Criminal Information, which applies the plain language of 18 U.S.C. § 844(f)(1) to the factual allegations of this case in Count One, confers on this court subject matter jurisdiction to proceed in this matter. Defendant's Motion to Dismiss Count One of the Indictment [sic] [DE 64] is DENIED.

SO ORDERED this 27th day of April, 2022.

RICHARD E. MYERS II
CHIEF UNITED STATES DISTRICT JUDGE

---

[7] The court notes that the U.S. Sentencing Commission, interpreting "organization" in 18 U.S.C. § 18, includes "governments and political subdivisions thereof" in its definition. U.S.S.G. § 8A1.1.

8